**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**GARY SHANE WALLACE** **PLAINTIFF**

**v.** **NO. 3:26-cv-00087-PSH**

**FRANK BISIGNANO, Commissioner of the Social Security Administration** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

In this case, filed pursuant to 42 U.S.C. 405(g), plaintiff Gary Shane Wallace ("Wallace") maintains that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole. Wallace offers several reasons why, one of which has merit. Wallace maintains, and the Court agrees, that the ALJ failed to fully explain why the medical opinions of Dr. Stephen Golden, M.D., ("Golden") are not persuasive.[1]

---

[1] The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." See Collins v. Saul, 648 F.3d 869, 871 (8th Cir. 2011).

Wallace alleged in his application that he became disabled and unable to work on June 28, 2024, as a result of impairments that include osteoarthritis in his bilateral knees. The ALJ denied Wallace's application on August 6, 2025, when Wallace was fifty-one years old. The ultimate question for the ALJ was whether Wallace was disabled for purposes of the Social Security Act from June 28, 2024, through August 6, 2025.

Wallace has complained of knee pain, and received medical attention for his pain, since before the alleged onset of disability date, see, e.g., Transcript at 314-317, and has been diagnosed with "[b]ilateral knee grade-4 chondromalacia of the medial compartments," see Transcript at 313. He underwent a total right knee replacement on November 25, 2024, see Transcript at 348-349, and has indicated an interest in "knee replacement surgery on his left knee ...," see Transcript at 606.

Wallace sought medical attention for his various complaints at clinics that included St. Bernards Healthcare First Care Clinic ("St. Bernards"). For instance, on December 4, 2023, he sought care at St. Bernards for follow-up for his conditions and medication refills. See Transcript at 324-329. Wallace was seen by Samantha Dill ("Dill"), an advanced practice nurse ("APRN"), and reported "chronic bilateral knee pain which will require surgery eventually." See Transcript at 325. Although Wallace had

lost weight, he had regained it, and the additional weight was causing "a lot more knee pain." See Transcript at 325. Dill noted Wallace's history of knee surgery, specifically noting his "right knee scope x 1" and his "left knee arthroscopy x 3." See Transcript at 326. Wallace was five feet, ten inches tall and weighed approximately 257 pounds. His extremities were normal to inspection, and he had a full range of motion. Counting calories and physical activity were recommended for losing weight.

On June 4, 2024, or approximately three weeks before the alleged onset of disability date, Wallace returned to St. Bernards and saw his primary care provider, Golden, for complaints unrelated to bilateral knee pain. See Transcript at 330-334. Golden, like Dill, noted Wallace's history of knee surgery. Upon examination, Wallace had a normal gait, and he moved all of his extremities well.

It is not clear when, if at all during the relevant period, Wallace saw Golden next. The ALJ made no mention of Wallace having seen Golden again, and Wallace, in his brief, makes no mention of having been seen again by Golden. Thus, Golden's lone contribution to the medical record is a "single treatment note," see Docket Entry 16 at CM/ECF 10, save a Medical Source Statement-Physical ("Statement") he completed ten months after he last saw Wallace.

On April 3, 2025, Golden completed his Statement on behalf of Wallace. See Transcript at 599-600. In the Statement, Golden opined, in part, that Wallace was capable of standing or walking for less than two hours in an eight hour workday and could only stand/walk at one time without a break for twenty minutes. He would need frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. His impairment or treatment for his impairment would cause him to be absent from work for more than three days per month. When prompted to explain the medical findings supporting the limitations, Golden wrote “total right knee replacement” and “arthritis left knee.” See Transcript at 600.

The ALJ assessed Wallace’s residual functional capacity and found that he was capable of performing a reduced range of light work. The ALJ imposed no limitation on Wallace’s ability to stand or walk during an eight-hour workday. As a part of making the assessment, the ALJ found Golden’s opinions not persuasive because “the limitations opined are overly restrictive based on the objective medical evidence in the record.” See Transcript at 21. The ALJ noted that “[t]he physical examinations reveal [Wallace] had restriction in the range of motion of his right knee, but consistently show he had 5/5 strength, excellent stability and was able to

ambulate independently without the need for an assistive device ...” See Transcript at 21. In support of the finding, the ALJ cited Exhibit 6F/07, which is a progress note from Wallace’s February 20, 2025, visit with APRN Harold Parsons, see Transcript at 360, and Exhibit 7F/04, which is a treatment record from Wallace’s March 3, 2025, physical therapy session, see Transcript at 496. The ALJ found at step four that Wallace was unable to perform his past work but found at step five there was other work he could perform. On the basis of those findings, the ALJ concluded that Wallace was not disabled within the meaning of the Social Security Act.

The ALJ is required to assess the claimant’s residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010). As a part of making the assessment, the ALJ is required to consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007).

20 C.F.R. 404.1520c(a) provides that the ALJ will not give any specific weight to any medical opinion. See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519 (E.D. Ark. June 24, 2020). The ALJ shall instead determine the persuasiveness of a medical opinion based on the following:

> [...] supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).

See Id. at 2.[2]

Here, the ALJ's analysis of the consistency factor was minimal. The ALJ simply noted that the limitations opined by Golden were "overly restrictive based on the objective medical evidence in the record," see Transcript at 21, and supported the finding by citing an APRN's treatment note and a treatment record from a physical therapy session. The Court is not prepared to say that the ALJ's analysis of the consistency factor is not supported by substantial evidence on the record as a whole, but the finding is supported by very little evidence. What is troubling, though, is the ALJ's analysis of the supportability factor.

[2] In Morton v. Saul, No. 2:19-cv-92-RLW, 2021 WL 307552, 7 (E.D. Mo. Jan. 29, 2021), a district court observed that as to the "supportability" factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." As to the "consistency" factor, the court observed that "an opinion is more persuasive if it is more consistent with the overall evidence as whole." See Id.

As noted above, the governing regulations provide, in part, that the "more relevant the objective medical evidence and supporting explanations presented," the more persuasive the opinion should be. If Golden's medical opinions do not present more relevant objective medical evidence and explanatory rationale in support of the opinions, the ALJ must explain why. See Walker v. Commissioner, Social Security Administration, 911 F.3d 550 (8th Cir. 2018) (old regulations case) (ALJ must explain with some specificity why he rejected treating physician's opinions). Although the specificity need not be great, there must be something to provide Wallace with an understanding of the ALJ's decision and "provide sufficient rationale for a reviewing adjudicator of court." See Phillips v. Saul, 2020 WL 3451519, 2 (citation and internal quotation marks omitted). Here, there is nothing, as the ALJ's analysis of the supportability factor is nonexistent.

The Commissioner of the Social Security Administration ("Commissioner") would have the Court overlook the ALJ's error and fill in the missing analysis, noting that Golden's June 4, 2024, treatment note "offers virtually nothing to support any of his opinions." See Docket Entry 16 at CM/ECF 10. The Commissioner's position has some appeal because Golden's treatment note reflects benign findings inconsistent with the medical opinions contained in his Statement. Although the Commissioner's

position may ultimately carry the day, it is the ALJ's responsibility in the first instance to explain why Golden's medical opinions are not supported by relevant objective medical evidence and explanatory rationale. Moreover, the Court does not find additional facts but simply determines whether the ALJ's decision is supported by substantial evidence on the record as a whole. See Nash v. Commissioner, Social Security Administration, 907 F.3d 1086 (8th Cir. 2018).

In short, the ALJ failed to address the supportability factor as he failed to explain why Golden's medical opinions are not supported by relevant objective medical evidence and explanatory rationale. A remand is therefore necessary. Upon remand, the ALJ shall weigh the supportability of Golden's medical opinions. If the ALJ finds that Golden's medical opinions are not supported by relevant objective medical evidence and explanatory rationale, the ALJ shall explain why.[3]

---

[3] Wallace also maintains that his work history was not considered in assessing his residual functional capacity. "A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments." See Smith v. Commissioner, Social Security Administration, 738 Fed.Appx. 889, 892 (8th Cir. 2018). Although the ALJ must consider a claimant's work history in evaluating his credibility, it is ordinarily not error if the ALJ fails to explicitly discuss the claimant's work history. See Id. Here, the ALJ commented during the administrative hearing that Wallace has "an excellent work record that [the ALJ] admire[d] very much." See Transcript at 35. In the ALJ's decision, though, he made little mention of Wallace's work history, simply noting that he had worked for a power cooperative for twenty-four years. See Transcript at 18. Although not a ground for a remand standing alone, the ALJ should consider Wallace's work history in evaluating his credibility.

The Commissioner's final decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Wallace.

IT IS SO ORDERED this 18th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE